Ethel H. BROOKS, Appellant,

v.

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY,
Respondent.

No. 87–7229.

United States Court of Appeals,
District of Columbia Circuit.

Sept. 21, 1988.*

Patrick J. Christmas and Douglas Huff, Washington, D.C., were on the brief, for appellant.

Sara E. Lister, Gen. Counsel, with whom Gerard J. Stief, Associate Gen. Counsel, and Robert J. Kniaz, Fredric H. Schuster, Attys., Washington, D.C., Washington Metropolitan Area Transit Authority, were on the brief, for respondent. John G. Elligers and Richard W. Beebe, Attys., Washington, D.C., Washington Metropolitan Area Transit Authority, also entered appearances for respondent.

Before WALD, Chief Judge, and STARR and WILLIAMS, Circuit Judges.

Opinion PER CURIAM.

## JUDGMENT

PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia, and was briefed by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the Court. *See* D.C.Cir.R. 13(i). On consideration thereof, it is

ORDERED and ADJUDGED, by the Court, that the judgment of the District Court appealed from in this cause is hereby affirmed. It is

FURTHER ORDERED, by the Court, *sua sponte*, that the Clerk shall withhold issuance of the mandate herein until seven days after disposition of any timely petition for rehearing. *See* D.C.Cir.R. 15, as amended on August 1, 1987. This instruction to the Clerk is without prejudice to the right of any party at any time to move for expedited issuance of the mandate for good cause shown.

## MEMORANDUM

This case raises the issue whether the Washington Metropolitan Area Transit Au-

---

* This opinion was previously released to the parties as an unpublished memorandum. It has been published pursuant to D.C.Cir. Rule 14(e).

thority (WMATA) is liable in tort for injuries resulting from passenger contact with the gap that separates subway trains from the station platforms. Ethel Brooks brought a tort action against WMATA for injuries sustained when her leg became lodged in the gap between the subway car and the platform at the Gallery Place Station. The District Court granted WMATA's motion for directed verdict on the ground that *Sledd v. WMATA*, 439 A.2d 464 (D.C.App.1981) is dispositive of the case. Trial Transcript at 84. We agree.

In *Sledd*, the plaintiff sued WMATA for injuries sustained as a result of stepping into the gap between the subway car and the platform. Her claims included a failure-to-warn contention. *Id.* at 466. The District of Columbia Court of Appeals held that the plaintiff had failed to adduce evidence which raised a genuine question that the gap was negligently designed or unsafe for its intended use. *Id.* at 469. The Court of Appeals based its decision on several factors. First, the width of the gap was in accord with industry standards prevailing at the time the system was constructed. Second, Metro platforms contained the "unusual safety feature of blinking lights on the platform edge." Third, the court noted that only two passengers out of three million had been involved in gap-related accidents. *Id.* at 468–69.

It is well established that a defendant's actual knowledge of harm is insufficient to support liability for failure to warn. There must also be evidence that the danger involved was sufficiently serious. *Hull v. Eaton*, 825 F.2d 448, 455 (D.C.Cir.1987); *Russell v. GAF Corp.*, 422 A.2d 989, 992 (D.C.App.1980). The threshold requirement of a dangerous product or condition applies regardless of whether the claim is grounded in negligence or strict liability. *Hull v. Eaton Corp.*, 825 F.2d at 455; *Russell v. GAF Corp.*, 422 A.2d at 991.

Appellant argues that, since a substantial number of gap-related accidents have occurred subsequent to the injury at issue in *Sledd*, sufficient evidence now exists to support a jury finding that the gap is sufficiently dangerous to generate a duty to warn. App. Reply Brief at 1–2. The absolute increase in gap-related accidents, however, does not remove this case from the ambit of *Sledd*. At the time of the injury at issue in *Sledd*, only two passengers had been injured out of a total ridership of 3 million. At the time of appellant's trial, 220 accidents had occurred out of a ridership of 905 million. Appendix at 8. The frequency, per passenger, of gap-related accidents has thus actually *decreased* since *Sledd* was decided. In light of *Sledd*, which we are of course duty bound to follow, appellant has failed to offer evidence sufficient to survive a directed verdict. The facts and legal issues being highly similar to those in *Sledd*, the judgment of the District Court is affirmed.

In view of our disposition, we have no occasion to address or resolve the various other issues briefed by appellee.